UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRENDA LEE and LEE EDWARDS; PATRICIA TUCKER and INGRID SWENSON; ELVIE JORDAN and CHALLIS GIBBS; RONALD DORFMAN and KENNETH ILIO, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 13-cv-8719 |
| DAVID ORR, in his official capacity as COOK COUNTY CLERK, | ) ) ) | |
| Defendant. | ) ) ) | Judge Sharon Johnson Coleman |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, Elvie Jordan, Challis Gibbs, Ronald Dorfman, and Kenneth Ilio (collectively "medically critical plaintiffs"), filed a motion for temporary restraining order and preliminary injunction [6] on behalf of themselves and a putative subclass of individuals in same-sex relationships who have a similar need to marry prior to June 1, 2014, due to a life-threatening illness of one or both parties. The Illinois Attorney General moved to intervene [15] in this case to address the plaintiffs' challenge to the constitutional validity, as applied to them, of the provisions of the Illinois Marriage and Dissolution of Marriage Act, 750 Ill. Comp. Stat. § 5/101, *et seq.* prohibiting marriage between same-sex couples. The Illinois Attorney General also filed a brief supporting plaintiffs' claim based on the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

This Court heard oral arguments on the motion for TRO and preliminary injunction on December 9, 2013, and granted the Illinois Attorney General's Motion to Intervene and also

granted the named plaintiffs' Temporary Restraining Order. This Court took under advisement the Motion for TRO and preliminary injunction brought on behalf of the subclass. For the reasons stated herein, the motion is granted.

**Background**

Under current Illinois law, same-sex partners are prohibited from marrying. 750 Ill. Comp. Stat. 5/212(a)(5). However, on November 5, 2013, both houses of the Illinois General Assembly passed Public Act 98-597 (Senate Bill 10), amending the Illinois Marriage and Dissolution of Marriage Act to permit same-sex couples to legally marry in Illinois. Although the bill was signed into law on November 20, 2013, it does not become effective until June 1, 2014, by operation of Article IV, Section 10, of the Illinois Constitution.

On December 6, 2013, plaintiffs filed a class action complaint seeking declaratory and injunctive relief alleging a violation of plaintiffs' rights under the Fourteenth Amendment to the United States Constitution caused by the exclusion of same-sex couples from marrying in Illinois. The Illinois Attorney General joined in support of the plaintiffs' request, arguing that the named plaintiffs and the putative subclass of medically critical plaintiffs meet the requirements for immediate injunctive relief. Defendant David Orr, Cook County Clerk, stated in Court that he does not oppose the motion, but must follow the law as it stands and cannot issue marriage licenses to same-sex couples without a court order.

Both Elvie Jordan and Challis Gibbs, and Ronald Dorfman and Ken Ilio have been in long-term committed relationships and wish to be married. Each couple has been together for more than twenty years and each couple has entered a civil union, demonstrating their commitment. Challis Gibbs and Ronald Dorfman are now suffering from life-threatening illnesses. Ms. Gibbs has stage-IV metastatic neuroendocrine cancer and spent most of November

in hospital. Mr. Dorfman has systolic congestive heart failure with a complete blockage of his right coronary artery and uncertain treatment prospects. The proposed subclass contemplates couples facing similarly dire circumstances such that without relief from this Court they will be effectively denied the right to marry now provided for under Senate Bill 10.

**Legal Standard**

"The standards for issuing [a temporary restraining order ("TRO")] are identical to the standards preliminary injunctions," *Long v. Bd. of Educ., Dist. 128,* 167 F. Supp. 2d 988, 990 (N.D. Ill. 2001). In determining whether to grant injunctive relief, this Court must first consider whether the moving party has demonstrated: (1) some likelihood of success on the merits, (2) there is no adequate remedy at law, and (3) irreparable injury will occur without obtaining the relief sought. *Planned Parenthood of Indiana, Inc. v. Comm'r of Indiana State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012). If the moving party meets these requirements, the Court then balances the harm to the non-moving party if preliminary relief is granted against the harm to moving party if relief is denied. *Id.* Lastly, the Court considers the public interest involved in either granting or denying the motion. *Id.* The Seventh Circuit employs a sliding scale analysis weighing the harm to a party against the merits of the case. "The more likely it is that [the moving party] will win its case on the merits, the less the balance of harms need weigh in its favor." *Id.* (quoting *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S., Inc*., 549 F.3d 1079, 1100 (7th Cir. 2008)).

**Discussion**

At the outset, this Court notes that it is not the first to grant injunctive relief under circumstances similar to the facts before this Court. On November 25, 2013, the Honorable Thomas Durkin entered an Order granting a TRO allowing the plaintiffs, Vernita Gray and

3

Patricia Ewert to obtain a marriage license and to wed prior to the June 1, 2014, effective date of Senate Bill 10. *See Gray v. Orr,* No. 13 C 8449 (Dec. 5, 2013). Ms. Gray is terminally ill with cancer. The court found after weighing all the factors and the compelling circumstances of Ms. Gray's potentially imminent death, that the injury that she and Ms. Ewert would suffer by denial of injunctive relief would be irreparably great. *Id.*

Judge Durkin's decision in *Gray v. Orr* was limited to those particular plaintiffs. Likewise, this Court has entered an Order granting relief to Elvie Jordan, Challis Gibbs, Ronald Dorfman, and Kenneth Ilio. Before the Court now, is the question of whether to grant injunctive relief to the proposed subclass of plaintiffs facing similarly dire circumstances.

"District courts have the power to order injunctive relief covering potential class members prior to class certification." *Ill. League of Advocates for the Developmentally Disabled v. Ill. Dep't of Human Servs.,* No. 13 C 1300, 2013 U.S. Dist. LEXIS 90977 (N.D. Ill. June 28, 2013). "The court may conditionally certify the class or otherwise order a broad preliminary injunction, without a formal class ruling, under its general equity powers. The lack of formal class certification does not create an obstacle to classwide preliminary injunctive relief when activities of the defendant are directed generally against a class of persons." *Id.* (citing 3 *Newberg on Class Actions* § 9:45 (4th ed. 2002) and *N.Y. State Nat. Org. For Women v. Terry*, 697 F. Supp. 1324, 1336 (S.D.N.Y. 1988)). Here, this Court will forgo a conditional class ruling at this time, but use its general equity powers to order preliminary injunctive relief for the proposed subclass of plaintiffs. Considering this is the second such case to come before a court in this district, the interest of efficiency and economy compel entry of such an order. The Court now turns to a brief discussion of the factors supporting injunctive relief.

*1.     Likelihood of Success on the Merits*

The putative subclass of medically critical plaintiffs here are likely to succeed on the merits of their claim that the provisions of the current Illinois law that deny them the right to marry based solely on their sexual orientation, as applied, violates their constitutional right to equal protection. Gradually, the United States Supreme Court has invalidated laws that single out gay and lesbian individuals for disparate treatment. *See Windsor v. United States,* 133 S. Ct. 2675, 2692-96 (2013) (holding the Defense of Marriage Act's restrictions on same-sex couples unconstitutional as a deprivation of liberty); *Lawrence v. Texas,* 539 U.S. 558, 578 (2003) (overruling *Bowers v. Hardwick*, 478 U.S. 186 (1986), and finding the criminal anti-sodomy law an unconstitutional government intrusion on the personal and private life of consenting adult individuals); *Romer v. Evans*, 517 U.S. 620 (1996) (invalidating a state law prohibiting local ordinances banning discrimination against gays and lesbians). The Illinois law, particularly the 1996 amendment to the Marriage Act declaring that same-sex marriages are against public policy, is clearly intended to single out gays and lesbians for disparate treatment based solely on their sexual orientation. Moreover, the new amendment contained in Senate Bill 10 legalizing same-sex marriage is an express repudiation of the state's earlier position and undermines the traditionally invoked justifications for the prohibition on same-sex marriage. As set forth in *Windsor*, denying same-sex couples equal status under the law serves no constitutionally legitimate purpose. 133 S.Ct. at 2693-96.[1] Therefore, this Court finds that the putative class of medically critical individuals are likely to succeed on the merits of their claim.

---

[1] While the Supreme Court has yet to expressly state the level of scrutiny that courts are to apply to claims based on sexual orientation, this Court need not decide that issue since a fair reading of *Windsor* suggests that the law as it stands in Illinois would not survive even minimum rational basis scrutiny.

2. *Irreparable Injury and Inadequate Remedy at Law*

Like the named subclass representatives, Jordan, Gibbs, Dorfman, and Ilio, the putative subclass members would easily demonstrate irreparable harm if in substantially similar circumstances with one or both members of the couple gravely ill. At the hearing on the instant motion, defendant David Orr, expressed a concern that is shared by this Court – how to implement a ruling in favor of the medically critical subclass. As Clerk of Cook County, Orr does not have discretion to determine who might fit this subclass. The Court has requested the parties to confer and provide either sufficiently limited agreed language delineating the subclass or some method, such as an affidavit or certified medical report, for implementing the Court's Order.

To satisfy the requirement of irreparable injury, the members of the subclass must demonstrate that they will be unable to marry if forced to wait until after June 1, 2014, due to the medical condition of one or both parties. If forced to wait until after June 1, 2014, to marry they will be deprived of significant federal rights and benefits such as, the right to take leave under the Family and Medical Leave Act, 29 U.S.C. § 2614(c)(1); the right file a joint income tax return and avail themselves of spousal tax benefits, especially exemptions from certain estate tax obligations; and eligibility for social security surviving spouse benefits. *See Windsor*, 133 S.Ct. at 2692-96 (holding that federal laws based on marital status must apply to same-sex marriages recognized under state law). These federal rights and benefits are particularly momentous for the putative subclass of medically critical plaintiffs contemplated by this Order. Equally compelling are the intangible personal and emotional benefits that the dignity of equal and official marriage status confers. *Id.* at 2692. Unquestionably, there is no adequate remedy at law for these plaintiffs.

### 3. *Balance of Harms and Public Interest*

The balance of harms and the public interest weigh heavily in favor of granting the temporary injunctive relief sought here. Given the Illinois General Assembly's enactment of Senate Bill 10, any erroneous decision here would only result in allowing a relatively few people to marry a short period of time sooner. The harm to the putative subclass of medically critical plaintiffs, on the other hand, would be far weightier since a denial of relief could effectively deny them the right to marry at all if one member of the couple passes away before June 1, 2014. Furthermore, by officially extending the institution of marriage to same-sex couples, the Illinois General Assembly has demonstrated that marriage equality serves the public interest. This Court can conceive of no reason why the public interest would be disserved by allowing a few couples facing terminal illness to wed a few months earlier than the timeline would currently allow.

**Conclusion**

For the reasons stated herein, and contingent upon an agreement between the parties of a sufficiently delineated subclass or a satisfactory method of implementation of this Order, this Court grants the plaintiffs' motion for temporary injunctive relief. Status hearing set for 12/16/2013 at 10:00 a.m. to stand.

IT IS SO ORDERED.

Date: December 10, 2013

Entered: _____
United States District Judge